## DESMOND & RYAN v. ROTH ET AL.

### [Second branch of the case.]

Now, as to the other branch of the case, Charles Roth got in arrears with his rent of the St. Clair Hotel to the Penn Mutual Company. The Penn Mutual Company was pressing him very hard for payment, and it became entirely evident to the Penn Company, or those who were trying to collect the claim for the Penn Company, that it was impossible to get money from him at that particular time. The only thing the agent could do would be to get security, and it is pretty hard for us to understand why a collecting agent may not take security for a claim when he can not get the money on it, providing he does not extend the time of payment in any way, or in any way change the obligation. However, it is

said that the collecting agent was doubtful as to his authority to take security. Charles offered, or it was arranged so that Charles was willing to give as security for the payment of that debt—over $2,800 then due, on which the mother was liable for a thousand dollars as surety—to transfer by a bill of sale to C. D. Robertson, his property in the St. Clair Hotel. Now, it is said to us that the agent was very doubtful as to his authority to take that security. If that was turned over as payment, there was no extension of time, except as it might be inferred in the fact of taking something that would have to be reduced to money, and thus devoloving time; but it is said the agent was doubtful of his authority, or felt very doubtful about it, and was willing to take the property, but it must be subject to the approval of the Penn Company, and it was concluded to do something in regard to taking the property, but leave it in a tentative form, not making it complete, but leaving it in such a form, that whether it was valid or invalid, whether it was effectual or ineffectual, was to be determined by the approval of the Penn Company. A regular bill of sale was made of this property. It was made to C. D. Robertson as for himself and trustee for the Penn Mutual Company.

It seems there were a number of guests in the hotel, some of whom were sick, and Roth made that fact known, that it would be impossible for him to proceed, if he gave up all he had there, and to take proper care of the persons who were sick in the house. Thereupon C. D. Robertson gave to Roth fifty dollars of his own money, no doubt intending that the Penn Company would made him good on-that fifty dollars, and took the assignment for the security of that fifty dollars for himself instead of for the debt Roth owed to the Penn Company. This bill of sale was placed on file. Perhaps the closest question on the evidence is, as to whether Mr. Robertson took possession of the property. The evidence is somewhat conflicting upon that. There is no doubt but that the evidence agrees upon one point—there was something said and done between the parties in regard to taking possession, and Mr. Goodhue, who represented Mr. Roth in this proceeding, said, or as he says, was requested by Mr. Robertson, inasmuch as he was boarding at that house, to look after the matter in behalf of Robertson, and keep possession of the property. Mr. Robertson don't place it near as strong as that, but after examining all this testimony we are satisfied that the proceedings went beyond the tentative state. We are satisfied that Mr. Robertson got such a possession there, by what was said and done, that he would have been in a very good position to have fought any creditor who had made an attachment upon that property, as that he was not only the owner by bill of sale, but was in possession of it, and in fact as against creditors who might attach or levy upon the property, if he had no possession he would be in no better position than he was before he took his bill of sale as against them. We are inclined to believe from this testimony, and so hold, that he did have, at least modified possession of that property, and a possession that would enable him, as against Roth at least, to claim as the owner and in possession of the property, and probably could have done so as against creditors.

Now, this being true, everything was done there that could be done, to make a complete transfer of this property to Mr. Robertson. I am not now speaking of what was to take place afterwards upon the election of the Penn Company. They might come on and repudiate the whole of it or confirm all that had been done. The matter rested that way for a few days, when the Penn Company came on and repudiated all that Mr.

Robertson had done in their behalf, and Mr. Robertson stopped right where he was, and the Penn Company went to Roth, and got the property transferred to it, and some additional property, I think transferred to it, as security for its claim, either by bill of sale or mortgage. I presume by bill of sale, and has been the owner and holder of the property under that transaction ever since, or at least has pretended to be such.

Now, on behalf of the creditors, the claim is made here that Mr. Robertson became the owner of that property, the assignee of that property from Roth for the payment of his own claim, and for the payment of the Penn Mutual Life Company, and under the well established rule of law in this state, if that is his situation, then he became the assignee by virtue of those facts, for all the creditors of Roth, as to that property, and the property was vested in him then as assignee for the benefit of all the creditors of Charles Roth. Having found already that the matter went beyond the mere tentative state, and that nothing was done thereafter except for the Penn Company to come on and make a different contract, and repudiate what Robertson had done. It might repudiate so far as it was concerned, but as to other creditors, the Penn Company could not repudiate. If the property had vested in Robertson as the trustee of the creditors generally of Roth, then it was beyond the power of Robertson to transfer the property in any manner so as to relieve himself from the obligation that vested upon him as such assignee.

This being true, if we are right in the facts we find this evidence: we think that Mr. Robertson, if he turned this property over to the Penn Company or any other person, no difference who, upon the Penn Company paying him fifty dollars, it seems he allowed the Penn Company to take possession of this property and get a title to it from Roth, and if Roth had already transferred it in such a way that it could not be thus surrendered, why then the Penn Mutual Company got no title to this property, and the title of it is still vested in Robertson as assignee.

This brings us to the conclusion that the creditors have a right to look to Mr. Robertson in this matter, and require him to account for the property that was turned over to him at the time he received that bill of sale, and the decree may be made accordingly.

*Pogue & Pogue* (*Province M. Pogue of Counsel*) and *D. F. Cash* for plaintiff.

*Robertson & Buchwalter* (*W. F. Buchwalter of Counsel*) and *Robert Pugh,* for C. D. Robertson.